IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 09-30029 |
| RIVER ROAD HOTEL PARTNERS, LLC, | ) | (Jointly Administered) |
| et al., | ) | |
| | ) | Hon. Janet S. Baer |
| Debtors. | ) | |
| | ) | **Hearing Date:  February 12, 2014** |
| | ) | **Hearing Time:  9:30 a.m.** |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on **Wednesday**, **February 12, 2014, at the hour of 9:30 a.m.**, or as soon thereafter as counsel may be heard, we will appear before the Honorable Janet S. Baer, or any judge sitting in her stead, in Room 615 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and present **Motion for Leave to Amend Second Interim and Final Application of FBR Capital Markets & Co.**, a copy of which is attached hereto and herewith served upon you, at which time and place you may appear if you so see fit.

Dated:  February 7, 2014

> */s/ William J. Barrett*
> WILLIAM J. BARRETT
> Barack Ferrazzano Kirschbaum &
> Nagelberg LLP
> 200 West Madison Street, Suite 3900
> Chicago, IL 60606-3465
> Phone: (312) 629-5170
> Facsimile: (312) 984-3150
> E-mail: william.barrett@bfkn.com
>
> -and-
>
> Andrew J. Currie
> Thomas E. Gilbertsen
> Venable LLP
> 575 7th Street, NW
> Washington, DC 20004
> (202) 344-4000
>
> *Attorneys for FBR Capital Markets & Co.*

1

949204v1

# CERTIFICATE OF SERVICE

      I, William J. Barrett, an attorney, hereby certify that on February 7, 2014, true and correct copies of the **Notice of Motion** and **Motion for Leave to Amend Second Interim and Final Application of FBR Capital Markets & Co**, were duly served on all parties receiving electronic notification in these cases from the Court's ECF system and also duly served via e-mail transmission on the parties on the Service List below.

                                                                                          /s/ William J. Barrett

## SERVICE LIST

Adam A. Lewis
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
E-mail: alewis@mofo.com

Kathleen E. Schaaf
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104
E-mail: kschaaf@mofo.com

David M. Neff
Perkins Coie
131 S. Dearborn St., Suite 1700
Chicago, IL 60603
E-Mail: dneff@perkinscoie.com

John W. Costello
Yeny C. Estrada
Edwards Wildman & Palmer LLP
225 West Wacker Dr., Suite 2800
Chicago, IL 60606
E-Mail: jcostello@edwardswildman.com
E-Mail: yestrada@edwardswildman.com

John P. Sieger
Katten Muchin Rosenman LLP
525 West Monroe St.
Chicago, IL 60661-3693
E-Mail: john.sieger@kattenlaw.com

2

949204v1

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Jeffrey E Altshul    jaltshul@ginsbergjacobs.com
- Brian A. Audette    baudette@perkinscoie.com, nsaldinger@perkinscoie.com;docketchi@perkinscoie.com
- William J. Barrett    william.barrett@bfkn.com
- William J. Barrett    william.barrett@bfkn.com
- Mark W. Bina    mbina@kdlegal.com
- Stephen T. Bobo    sbobo@reedsmith.com
- Matthew J. Botica    mbotica@winston.com, neverett@winston.com
- Ashley W Brandt    abrandt@freeborn.com, jtovarrisley@freeborn.com
- Ann M Bredin    abredin@mpslaw.com, dnichols@mpslaw.com
- Jeffrey Chang    jchang@changlawpllc.com
- Aaron B Chapin    achapin@reedsmith.com
- John J Chitkowski    jjc@chitkowskilaw.com, jennifer@chitkowskilaw.com
- William J. Choslovsky    wchoslovsky@ngelaw.com, ecfdocket@ngelaw.com
- Nathan F Coco    ncoco@mwe.com
- William J Connelly    wconnelly@hinshawlaw.com
- Christopher Dean    cdean@novackmacey.com
- Faith Dolgin    faith.dolgin@illinois.gov
- Brian M. Dougherty    bmd@gsrnh.com, kam@gsrnh.com
- Yeny C. Estrada    yestrada@edwardswildman.com, kconnor@edwardswildman.com;ECFFilings@edwardswildman.com
- Jonathan P Friedland    jfriedland@lplegal.com, jsarantopoulos@lplegal.com
- Louis J Gale    gale@wbs-law.com, mosquera@wbs-law.com;KMorrissey@lewis-kappes.com)
- Jeremy M Guth    jguth@kmksc.com
- Robert J. Henry    rhenry@scopelitis.com, wdbrejcha@scopelitis.com;mweiland@scopelitis.com;Leib.Lerner@alston.com;Melanie.Ezerzer@alston.com
- Steve Jakubowski    sjakubowski@rsplaw.com, docketing@rsplaw.com
- Julie A. Johnston-Ahlen    jjohnston-ahlen@novackandmacey.com, mbianchi@novackmacey.com
- Myja K Kjaer    mkjaer@winston.com, ECF_Bank@winston.com
- Robert J. Labate    robert.labate@hklaw.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Leib M Lerner    leib.lerner@alston.com
- Thomas M Lombardo    tlombardo@ginsbergjacobs.com
- Heather Maly    hlmaly@venable.com, osalcedo@venable.com
- Adam M Mergenthaler    adam_merg@yahoo.com
- Kevin H Morse    khmorse@arnstein.com
- John S Mrowiec    jsm@cmcontractors.com
- David M Neff    dneff@perkinscoie.com, nsaldinger@perkinscoie.com

949204v1

- Erik Nelson    ern@cmcontractors.com
- Jennifer A Nielsen    jnielsen@lymannielsen.com, rhiss@lymannielsen.com;njohnson@lymannielsen.com;dbutusov@lymannielsen.com
- Michelle G Novick    mgnovick@arnstein.com, lcsolomon@arnstein.com
- Christopher Parker    crparker@michaelbest.com
- Ann E Pille    ann.pille@dlapiper.com, apille@reedsmith.com
- Ann E Pille    ann.pille@dlapiper.com, apille@reedsmith.com
- Edward Pirok    epirok@frank-pirok.com
- Dennis E. Quaid    dquaid@tcfhlaw.com
- Ronald R Rassin    rrr@gordonrappold.com
- Richard P Reichstein    rprlaw@legaleagle.com
- Jennifer Rojas    rojas@dlec.com, stein@dlec.com
- Jeffrey B Rose    jrose@tishlerandwald.com, bmurzanski@tishlerandwald.com
- Patrick F Ross    pfross@uhlaw.com, kburde@uhlaw.com;rjanczak@uhlaw.com
- Carrie C Ruzicka    ccruzicka@michaelbest.com, lmarshall@pilgrimchristakis.com
- Marilyn F Schlesinger    marilyn.schlesinger@cookcountyil.gov
- John P Sieger    john.sieger@kattenlaw.com
- Lawrence A. Stein    lstein@huckbouma.com, lkoster@huckbouma.com
- Fuad R Sulayman    fsulayman@clarkhill.com
- Donald A. Tarkington    dat@novackandmacey.com
- L. Judson Todhunter    JTodhunter@howardandhoward.com
- David P. Vallas    dvallas@polsinelli.com
- Bruce L Wald    bwald@tishlerandwald.com
- Eric E. Walker    ewalker@perkinscoie.com, nsaldinger@perkinscoie.com;Docketchi@perkinscoie.com
- Gretchen Wehrenberg Stewart    stewart@pacaenforcer.com
- Craig C Westfall    craig@nigrowestfall.com, ann@nigrowestfall.com
- Samuel C. Wisotzkey    swisotzkey@kmksc.com, kmksc@kmksc.com
- Andrew L. Wool    wool@chapman.com

949204v1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>RIVER ROAD HOTEL PARTNERS, LLC, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-30029<br>(Jointly Administered)<br><br>Hon. Janet S. Baer |

**MOTION FOR LEAVE TO AMEND SECOND INTERIM
AND FINAL APPLICATION OF FBR CAPITAL MARKETS & CO.**

Pursuant to Fed. R. Bankr. P. 9014 and 7015, FBR Capital Markets & Co. ("FBR"), court-approved financial advisor to the above captioned debtors, respectfully submits this motion for leave to file an amended Second Interim and Final Application of FBR Capital Markets & Co. for Allowance and Final Approval of Compensation for Services Rendered and Reimbursement of Expenses Incurred As Financial Advisor to the Debtors for the Period August 17, 2009 Through November 23, 2011 [Doc. No. 955] ("Final Application") to add an alternative claim for equitable relief[1], and in support states as follows:

**INTRODUCTION**

1. A trial in this contested matter has been set for March 24, 2014. The Court has made clear that the sole claim to be heard at trial is FBR's contract claim for its pre-approved Restructuring Fee under Section 328(a) of the Bankruptcy Code.

---

[1] FBR's proposed Amended Final Application is attached hereto as **Exhibit A**.

1

2. At previous status conferences on this matter, FBR sought leave to amend the pretrial order by identifying exhibits and issues supporting an alternative equitable claim for compensation. FBR indicated that its equitable claims are based on the existing discovery record, and is asserted as an alternative ground for recovery in the event its pre-approved contract claim fails due to the latent ambiguity that has now been identified in the Court's September 17, 2009 Retention Order, on which FBR relied in performing substantial work in this bankruptcy matter.

3. At the most recent status conference on January 14, 2014, the Court denied FBR leave to amend the pretrial order on grounds that such an amendment is premature: FBR's equitable claims are triggered only if its contract claim fails. Yet, if FBR's contract claim fails at trial due to the newly-identified Retention Order ambiguity, its equity claims would become immediately ripe. FBR therefore seeks to amend its Final Application now – out of an abundance of caution – to preserve its alternative claims for equitable relief against the risk that a ruling on the contract claim may be deemed a final judgment in the absence of such an amendment.

4. As discussed in more detail below, Plan Transferee suffers no genuine unfair prejudice from this amendment because the facts necessary to adjudicate the alternative equitable claims for relief were the subject of earlier, exhaustive discovery on Plan Transferee's own numerous objections to FBR's fee application, involving many of the same fact issues about whether FBR performed substantial work in reliance on the Retention Order and whether that

work contributed to this Chapter 11 proceeding. FBR will continue to bear the burden on these alternative claims, and they clearly are not futile.

## PROCEDURAL BACKGROUND

5. The relevant procedural background is set forth fully in the pending pretrial order and earlier briefing of the parties. Briefly stated, River Road Hotel Partners, LLC and its affiliates ("Debtors") owned the Intercontinental Hotel at O'Hare Airport, and filed voluntary chapter 11 petitions on August 17, 2009.

6. The bankruptcy court authorized Debtors' retention of FBR as sole financial advisor under 11 U.S.C. §328(a), pre-approving an engagement letter that provides FBR a restructuring fee based on the percentage of indebtedness involved in any restructuring ("Retention Order"). FBR performed the services for which it was retained. A restructuring became effective under Lenders' chapter 11 plan, which created Bletchley Hotel at O'Hare LLC ("Bletchley" or "Plan Transferee") to take and operate the hotel while administering remaining claims.

7. On January 18, 2012, FBR timely applied to recover its restructuring fee and Plan Transferee objected on several grounds. The bankruptcy court set the matter for trial and, in the midst of exhaustive discovery, FBR moved for summary judgment which Plan Transferee opposed. FBR then moved *in limine* to preclude certain evidence identified in the pretrial submissions and Plan Transferee's summary judgment opposition.

8. Finding that its own Retention Order was ambiguous about the type of restructuring that triggers FBR's restructuring fee, the Court relied on the challenged evidence to

3

grant *sua sponte* summary judgment to non-movant Plan Transferee on grounds that FBR's fee should be payable only for a "debtor-sponsored plan." The Court then denied FBR's *in limine* motion as moot.

9.  FBR appealed and the United States District Court for the Northern District of Illinois reversed the *sua sponte* summary judgment order, remanding for a determination on the merits.

10. FBR renewed its motion *in limine* on remand, which the Court heard at oral argument on January 14, 2014. At that hearing, FBR moved for leave to amend the pretrial order to submit issues and exhibits relative to alternative claims for equitable relief in the event its contract claim fails on the newly-identified ambiguity of the Court's Retention Order. The Court denied FBR leave to amend the pretrial order, indicating that such a request is premature unless and until FBR's contract claims actually fail at trial. This contested matter is now set for trial on March 24, 2014.

## FACTUAL BACKGROUND

11. The Bankruptcy Court approved the retention and employment of FBR as financial advisor to Debtors upon the terms and conditions of the engagement letter dated August 13, 2009 between the Debtors and FBR (the "Engagement Letter"). The Engagement Letter provides, in relevant part, that FBR would be paid a nominal monthly fee of $10,000 plus a "Restructuring Fee" of 1.35 percent (01.35%) of the aggregate principal amount of any indebtedness ("Existing Obligations") involved in "any restructuring." Engagement Letter, at ¶ 3(b) & (c).

4

12. Under the terms of the Engagement Letter, FBR receives a Restructuring Fee upon the occurrence of (i) *any* restructuring, reorganization recapitalization, consolidation or transaction that (ii) involves all or a significant portion of Debtors' indebtedness and is (iii) achieved through solicitation of votes by holders of the Existing Obligations, or one of the other "restructuring" events listed above. On September 17, 2009, the bankruptcy court entered an order approving FBR's Engagement Letter and directing that fees payable to FBR are subject to review only under §328(a) of the Bankruptcy Code and not under the reasonableness standard of §330 of that statute (the "Retention Order"). Paragraph 4(a) of the Retention Order provides that the "restructuring" fee (as defined in the Engagement Letter, the "Restructuring Fee"), determined as a percentage of the Debtors' outstanding indebtedness involved in a restructuring or reorganization as described in the Retention Application, was "expressly contingent upon consummation of a restructuring contemplated by the Engagement Letter."

13. Typically an investment banking firm like FBR would earn $150,000 to $250,000 per month for providing these types of financial services to a debtor. However, FBR agreed to drastically reduce this market fee based on the understanding that it would earn the Restructuring Fee upon any Restructuring, as contemplated by the Engagement Letter.

14. FBR's restructuring professionals proceeded to spend approximately 200 hours working for the Debtors, exclusive of the hundreds of hours expended by members of the FBR real estate group who spearheaded the Debtors' marketing efforts. In consultation with the Debtors, FBR's real estate professionals worked to raise capital and/or attract a purchaser, investor or joint venture partner to effectuate a plan of reorganization. Though not subject to

5

time-keeping requirements, the amount of time expended by FBR's real estate professionals exceeded the hours expended by FBR's restructuring professionals.

15. FBR's marketing process resulted in a stalking horse (the "Stalking Horse") bid to acquire the Debtors' assets following further marketing and a public auction and pursuant to a chapter 11 plan. Thereafter, FBR's professionals worked with Debtors and their counsel, and with the Stalking Horse and its counsel, to formulate and implement a chapter 11 plan and bid procedures for an auction sale of the Debtors' assets. The FBR team also worked with Debtors to formulate possible alternative plans of reorganization that might be acceptable to the Debtors' creditors in the event that the original proposed plan of reorganization was not confirmed.

16. On June 4, 2010, during the Debtors' exclusive period for filing a chapter 11 plan, the Debtors filed a joint chapter 11 plan and a bid procedures motion that proposed, among other things, to sell the InterContinental Chicago O'Hare Hotel and a parcel of real estate adjacent to the Hotel and to preclude the Debtors' secured lenders (the "Lenders") from credit bidding at the auction for the Hotel Property pursuant to section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

17. On June 24 2011, the Lenders filed the Lenders' Fourth Amended Joint Chapter 11 Plan and on July 7, 2011, the Court entered an order confirming the Lender's Fourth Amended Joint Chapter 11 Plan, as amended by the First Addendum to Lenders' Fourth Amended Joint Chapter 11 Plan (as amended, the "Plan"). The Plan became effective on November 23, 2011 and on January 18, 2012, FBR filed its Final Application.

6

# ARGUMENT

## I. LEAVE TO AMEND SHOULD BE FREELY GRANTED

18. Pursuant to Fed.R.Bankr.P. 9014, the Court may direct that the rules governing adversary proceedings also control in a contested matter, including Fed.R.Bankr.P. 7015. Fed.R.Bankr.P. 7015 applies Fed.R.Civ.P. 15 to the amendment of pleadings in a bankruptcy proceeding. Fed.R.Civ.P. 15(a) provides that a party may amend its complaint "at any time" by leave of the court, and that leave "shall be freely given when justice so requires." *See also Toth v. USX Corp.*, 883 F.2d 1297, 1298 (7th Cir. 1989).

19. A pleading amendment relates back to the date of the original pleading if the amendment asserts – as is clearly the case here – a claim or defense that arose out of the conduct, transaction or occurrence set out in the original pleading. Fed.R.Civ.P. 15. While some limits on amendments exist, the guiding principle is that an amendment should not "unfairly surprise or prejudice the defendant," and may only be denied on grounds of "undue delay, bad faith, … dilatory motive, undue prejudice…, or futility of amendment." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004); *Luckett v. Conlan*, 561 F. Supp. 2d 970, 974 (N.D. Ill. 2008).

20. The party opposing an amendment has the burden of showing that the amendment would cause unfair prejudice, would prove futile, or is otherwise sought in bad faith. *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1412 (S.D. Ind. 1996). To meet that burden, the party opposing amendment must show ***more*** than the standard gripe that amendment is sought long

7

after the original pleading, or that the new theories could have been added originally. *Id.* There is no unfair prejudice here, nor is the subject amendment sought in bad faith or futile.

## II.    PLAN TRANSFEREE SUFFERS NO UNFAIR PREJUDICE

21.    FBR's alternative claim for equitable relief will arise only if the newly-identified ambiguity in the Court's Retention Order is construed against it at trial, defeating FBR's claims for the pre-approved Restructuring Fee under Section 328(a). Whether based in *quantum meruit*, restitution, promissory estoppel or reliance, FBR's equitable claims are based on the same transaction and operative facts at issue in the contract claims and objections already asserted by the parties. The evidence supporting or rebutting these equitable claims have already been developed by the parties during exhaustive discovery, including the circumstances surrounding negotiation of FBR's Engagement Letter and its approval by the Court; whether FBR did or did not thereafter provide the contracted-for services; and the value of such services in this and other similar matters. Some of these issues overlap with the matters to be tried next month.

22.    The addition of a claim for equitable relief does not require additional discovery. Even if some additional research were required, that does not suffice to show the type of harm capable of defeating a request to amend. *United States v. Security Pacific Bus. Cred., Inc.*, 956 F.2d 703, 707-08 (7th Cir. 1992) (allowing amendment of complaint to change theory of case five days before trial when only harm was burden of additional research). The discovery requests propounded by Plan Transferee and responded to by FBR cover the waterfront of issues relevant to a reasonable equitable compensation inquiry. In fact, almost every one of Plan Transferee's discovery requests dealt with the work FBR performed for or on behalf of the

8

Debtors, including a general document request for all documents concerning any services performed by FBR. *See* Plan Transferee's Request for Production of Documents to FBR, attached hereto as **Exhibit B**. In response to these discovery requests, FBR produced over 300,000 pages of documents. These documents, as well as the depositions taken in this matter, provide all of the evidence needed to prove or rebut FBR's claim for equitable compensation[2].

23. For all of these reasons, Plan Transferee is in no way unfairly prejudiced by the addition of equitable claims, which rely on the same facts and the same evidence already at issue in this contested matter.

### III. FBR'S PROPOSED AMENDMENT IS NOT FUTILE.

24. If FBR cannot recover the Restructuring Fee under its contract claim because – unbeknownst to both FBR and the Court – the Retention Order pre-approving it in 2009 was infected with a latent ambiguity that would be read three years later – after FBR's work was completed – to limit the fee's payment to a "debtor-sponsored plan," then FBR should be given the opportunity to seek equitable compensation. None dispute, and the evidence has already been fully developed in this action, that FBR drastically reduced the Engagement Letter's monthly fees in return for a better Restructuring Fee. FBR cut this bargain at the outset, and asked that its compensation be pre-approved under §328(a) before work began. The Engagement

---

[2] For example, evidence of the amount and the value of the work performed is referenced in numerous documents produced including email correspondence between the parties (and listed on Plan Transferee's exhibits list) where FBR and Plan Transferee discussed the fair market value of such services with precedential fee examples provided. *See, e.g.,* FBR308981, attached as **Exhibit C** (email with attachments between FBR and Plan Transferee listing prior similar engagements where investment banker was paid fee of $150,000 to $250,000 monthly). These topics were also the source of questioning at depositions in this matter.

9

Letter was pre-approved and clearly entitled FBR to a fee for "any restructuring," but-for the now claimed ambiguity lurking in the bankruptcy court's Retention Order conditioning FBR's fee on a "restructuring contemplated by the Engagement Letter." In reliance on the Retention Order, FBR expended great time and effort marketing the distressed properties and conducting a market test during turbulent times in the hospitality sector. All interested parties benefited from FBR's work: a market test conducted in uncertain economic conditions. The Lenders who ultimately created Plan Transferee and successfully sponsored their own Fourth Amended Joint Plan– and the unsecured creditors who benefited from and voted in support of that restructuring – could never unlearn what they learned from FBR's market test. Indeed, FBR was the only financial advisory engaged by any of the parties to this chapter 11 case, the only firm that conducted a market test in this matter and, as noted at the Court's recent status conference, Lenders' own principle cited FBR's work in a declaration seeking approval of Lender's Plan.

25. In cases involving mutual mistake and analogous situations where a party relied in good faith on a contract that ultimately failed, Illinois courts recognize that *quantum meruit* or promissory estoppel or restitution are appropriate remedies to recover for services rendered in reasonable reliance on a failed contract. *See, e.g., John Burns Construction Co. v. Interlake, Inc.*, 125 Ill.App.3d 26 (1984) (trial court, on the basis of mutual mistake, rescinded the parties' written contract and applied quantum meruit, awarding monetary damages based on value of services rendered); *see also Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill.App.3d 597, 606 (1999) ("Under a theory of quantum meruit, the measure of recovery is reasonable value of the plaintiff's services."); *Bernstein and Grazian, P.C. v. Grazian and Volpe, P.C.*, 402 Ill.App.3d

961, 979 (2010) ("'To recover under a quantum meruit theory, the plaintiff must prove that: (1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) [the] defendant accepted this service, and (4) no contract existed to prescribe payment for this service.'…"the measure of recovery is the reasonable value of work"); *In re First Security Mortg. Company, Inc.*, 117 B.R. 1001, 1007 (Bankr. N.D. Okl. 1990) (bankruptcy court granted professional fees under equitable theories because a court of equity "is seldom justified in disregarding quantum meruit.")

26. Given this case law, if the Court determines that the Retention Order does not allow FBR to earn a Restructuring Fee under the Engagement Letter, then FBR may seek compensation through equitable remedies for the substantial time and effort it expended marketing the distressed properties and conducting a market test. As the Court acknowledged at the January 14 hearing, FBR's equitable arguments are premature at this juncture – but they necessarily arise if an adverse ruling prevents recovery under the pre-approved contract.

27. Given all of the foregoing, there is no valid argument that the addition of an alternative claim for equitable relief somehow is futile or fails as a matter of law. *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir.1989) ("An amendment is futile if the amended pleading could not survive a motion for summary judgment.").

### IV.   AMENDMENT IS TIMELY AND RELATES BACK UNDER RULE 7015.

28. The addition of an alternative claim for equitable relief would be timely because the amendment of the Final Application would relate back to FBR's original Final Application which was timely filed on January 18, 2012. Under Fed.R.Civ.P. 15, an amendment to a

pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out in the original pleading. There is no doubt here that an equitable compensation claim under these facts arises out of the same conduct at issue in FBR's original Final Application.

## CONCLUSION

For the foregoing reasons, FBR requests leave to amend its Final Application to add alternative claims for equitable relief, with the understanding that such alternative claims arise only if the Court finds FBR is not entitled to a Restructuring Fee at the March 24, 2014 trial. A proposed Amended Final Application is attached hereto as **Exhibit A**.


Dated: February 7, 2014

        FBR CAPITAL MARKETS & CO.

        By:   /s/ William J. Barrett
              One of Its Attorneys
        William J. Barrett
        Barack Ferrazzano Kirschbaum & Nagelberg LLP
        200 West Madison St., Suite 3900
        Chicago, IL 60606 (312) 629-5170
        william.barrett@bfkn.com

        -and-

        Andrew J. Currie
        Thomas E. Gilbertsen
        Venable LLP
        575 7th Street, NW Washington, DC 20004
        (202) 344-4000

        *Attorneys for FBR Capital Markets & Co.*