# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 09 B 30029 |
| | ) | |
| RIVER ROAD HOTEL PARTNERS, LLC | ) | Chapter 11 |
| ET AL., | ) | |
| | ) | |
| Debtors. | ) | Honorable Janet S. Baer |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the continuing dispute over fees and expenses, now totaling over $4.4 million, sought by FBR Capital Markets & Co. ("FBR"), a financial advisor retained by the Debtors. In a prior proceeding, FBR requested a restructuring fee (the "Restructuring Fee"), and Bletchley Hotel at O'Hare LLC ("Bletchley"), the plan transferee created through the confirmed plan and the entity responsible for the payment of all allowed administrative expenses in the case, objected. After briefing and a bench trial, the Court issued a memorandum opinion holding that FBR was entitled to the Restructuring Fee (the "October 2014 Opinion"). *See In re River Rd. Hotel Partners, LLC*, 520 B.R. 691 (Bankr. N.D. Ill. 2014). The corresponding order approving the Restructuring Fee directed FBR to submit an amended final fee application with updated calculations for the Fee.

FBR filed its amended second fee application (the "Amended Fee Application"), which seeks not only the Restructuring Fee of approximately $2.5 million, but also more than $1.8 million in expense reimbursement, the majority of which was incurred for attorneys' fees in defense of FBR's fee request. Bletchley objected to the Amended Fee Application, thus giving rise to the instant dispute. In its objection, Bletchley effectively asks the Court to reconsider its

decision in the October 2014 Opinion regarding FBR's entitlement to the Restructuring Fee.

Bletchley also argues that FBR's expense request for attorneys' fees for work performed in

defending the fee application should be denied or the fees substantially reduced. For the reasons

set forth below, the Court will not reconsider its decision in the October 2014 Opinion and finds

that FBR is entitled to the Restructuring Fee in the amount of $2,568,145.89. With respect to the

reimbursement of expenses, the Court awards FBR $62,466.60. All other requested expenses are

denied.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## BACKGROUND

The Court incorporates the background section of the October 2014 Opinion. To provide

context for this ruling, certain relevant facts are repeated below, together with additional facts

pertinent to this Memorandum Opinion.

This case arises out of the Debtors' chapter 11 bankruptcy filing in connection with their

ownership of the Intercontinental Hotel at O'Hare Airport. On August 13, 2009, FBR and the

Debtors executed an engagement letter (the "Engagement Letter"), which formalized the

arrangement between the parties regarding the retention of FBR as financial advisor to the

Debtors. (*See* FBR's Am. Second Interim & Final Fee Appl. ("FBR's Am. Fee App"), Ex. A.)

According to the Engagement Letter, which was drafted by FBR, FBR agreed to review and

analyze the Debtors' business, operations, and financial projections; advise and assist the Debtors

2

in restructuring and financial transactions; and provide the Debtors with financial advice in

developing and implementing a restructuring. (*Id.* at ¶¶ 1 & 2.) In compensation for the services

rendered by FBR, the Debtors agreed to pay a financing fee, a monthly fee of $10,000, a cash

retainer of $50,000 (to be applied to the first five monthly fee payments), and a Restructuring Fee

equal to 135 basis points of the aggregate principal amount of any existing obligations involved

in the restructuring. (*Id.* at ¶ 3(a)-(d).) As for the reimbursement of FBR's expenses, the

Engagement Letter provided, in relevant part, as follows:

> In addition to any fees that may be payable to [FBR] and,
> regardless of whether any transaction occurs, the [Debtors] shall
> promptly reimburse to [FBR] (a) all reasonable out-of-pocket
> expenses . . . and (b) reasonable fees and expenses of legal counsel,
> if any, in each case incurred by [FBR] in connection with the
> services provided hereunder.

(*Id.* at ¶ 3(e).)

With respect to the employment of FBR, the Debtors agreed to the retention "on the terms

and conditions set forth in th[e] [Engagement Letter] under the provisions of 11 U.S.C. §§ 327

and 328 subject to the standard of review provided in Section 328(a), and not subject to the

standard of review under 11 U.S.C. § 330 or any other standard of review." (*Id.* at ¶ 4.) The

Engagement Letter further provided that:

> In so agreeing to seek [FBR]'s retention under Section 328(a), the
> [Debtors] acknowledge[] that [they] believe[] that [FBR]'s general
> restructuring experience and expertise, its knowledge of the capital
> markets and its merger and acquisition capabilities will inure to the
> benefit of the [Debtors] in pursuing any Restructuring and/or
> Financing, that the value to the [Debtors] of [FBR]'s services
> hereunder derives in substantial part from that expertise and
> experience and that, accordingly, the structure and amount of the
> contingent fees are reasonable under the standard set forth in
> Section 328(a), *regardless of the number of hours to be expended*

3

> by [FBR]'s professionals in the performance of the services to be
> provided hereunder.

(*Id.* (emphasis added).)

The Debtors also agreed under the Engagement Letter to "indemnify and hold harmless"

FBR and its affiliates, along with their directors, officers, employees, agents, and controlling

persons, "from and against all losses, claims, damages and liabilities . . . to which . . . [they

became] subject under any applicable federal or state law, or otherwise," which were related to or

resulting from FBR's performance of the services contemplated by the engagement. (*Id.* at ¶ 12

& App. I.) Additionally, the Debtors agreed to "promptly reimburse" FBR for all "reasonable

expenses (including reasonable counsel fees and expenses)" as they were incurred "in connection

with the investigation of, preparation for or defense arising from any threatened or pending

claim, whether or not [FBR was] a party and whether or not such claim, action or proceeding was

initiated or brought by the [Debtors]." (*Id.* at App. I.)

On September 3, 2009, the Debtors filed an application to employ FBR. (*See* Docket No.

48.) Two weeks later, on September 17, 2009, the Court entered an order authorizing FBR's

retention and employment (the "Retention Order"). (*See* Docket No. 79.) Among other

provisions, paragraph 3 of the Retention Order stated that "FBR's non-restructuring professionals

shall not be required to keep time records" and that "FBR shall not be required to provide or

conform to any schedule of hourly rates." (*Id.* at ¶ 3.) In addition, paragraph 4 of the Retention

Order stated, in pertinent part, the following with respect to the payment of fees and expenses to

FBR:

> 4. Notwithstanding anything contained herein to the contrary, the
> fees payable to FBR pursuant to the Engagement Letter shall be

subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standards of review set forth in section 330 of the Bankruptcy Code; <u>provided</u> <u>however</u>, that . . . *the reimbursement of all FBR's out-of-pocket expenses shall be subject to further review and approval by the Court pursuant to section 330 of the Bankruptcy Code and applicable Local Rules and Federal Rules of Bankruptcy Procedure[.]*

(*Id.* at ¶ 4 (emphasis added).)

Over the course of the chapter 11 case, FBR performed the contracted-for financial services. On June 4, 2010, the Debtors filed a plan and related documents which, among other things, sought to sell encumbered assets free and clear of liens without permitting Amalgamated Bank, a secured lender, to credit bid its claim in the sale. (*See* Docket Nos. 308 & 309.) The Debtors' plan approach in this regard was unsuccessful, and on July 7, 2011, the Court confirmed a plan proposed by Amalgamated Bank. (*See* Docket No. 853.) Under the confirmed plan, Bletchley was created as the plan transferee and made entirely responsible for paying allowed administrative expenses, including all fees and expenses owed to FBR.[1] (*See* Docket No. 840; FBR's Am. Fee App ¶ 14.)

On January 18, 2012, FBR filed its second interim and final fee application, seeking, *inter alia*, compensation for the period September 1, 2010 through November 23, 2011 in the amount of $2,546,965.73, of which $2,396,965.73 constituted the Restructuring Fee. (*See* Docket No. 955.) Bletchley objected, claiming that FBR was not entitled to receive the Restructuring Fee because the restructuring in the case was based on a third party's plan. After FBR filed a motion for summary judgment, Bankruptcy Judge Bruce W. Black found that the Retention Order was ambiguous, denied FBR's motion, and granted summary judgment *sua sponte* for Bletchley.

---

[1] Bletchley is a wholly-owned subsidiary of Amalgamated Bank. (*See* FBR's Am. Fee App ¶ 14.)

(*See* Docket Nos. 1133 & 1134.) On appeal, the district court found that the agreement regarding

entitlement to the Restructuring Fee was ambiguous and that the interpretation of that agreement

presented a genuine issue of material fact.[2] (*See* Docket No. 1164.) Accordingly, the district

court affirmed in part, reversed in part, and remanded the matter for trial. After a three-day

evidentiary hearing, the Court issued the October 2014 Opinion, finding that the language of the

Engagement Letter was unambiguous, that the Retention Order referred back to the Engagement

Letter and its broad definition of restructuring, and that there was no clear evidence that the

language of the Retention Order was meant to limit FBR to a Restructuring Fee based on

confirmation of a debtor-sponsored plan or on a restructuring that was the result of FBR's efforts.

*River Rd.*, 520 B.R. at 703. Additionally, the Court construed the ambiguity created by the

Retention Order against the Debtors, who had drafted and revised the Order, and in favor of FBR

under the doctrine of *contra proferentem*, which requires contractual ambiguities to be resolved

against the drafter. *Id.* Accordingly, the Court concluded that FBR is entitled to the

Restructuring Fee and directed FBR to file an amended fee application with updated calculations

for the Fee. *Id.* at 703-04; *see* Docket No. 1211.

In accordance with the Court's directive, on November 13, 2014, FBR filed its Amended

Fee Application, which seeks payment of the Restructuring Fee in the amount of $2,568,145.89

and reimbursement of expenses in the amount of $1,846,838.32, of which $1,773,331.00 was

incurred for attorneys' fees in connection with filing and pursuing the compensation initially

requested in the fee application. (*See* Docket No. 1215.) Bletchley objected to the Amended Fee

---

[2] The district court noted that the agreement regarding the Restructuring Fee consists of both the
Engagement Letter and the Retention Order. (*See* Docket No. 1164 at 5 ("Here, the contract is the August 13, 2009
Engagement Letter, as explained by the Bankruptcy Court's September 17, 2009 Retention Order.").)

Application, asking the Court to reconsider its decision that FBR is entitled to the Restructuring

Fee and urging that the attorneys' fees for work performed in defending the fee application be

denied or considerably lowered. The objection has been fully briefed, the United States Supreme

Court has decided a key issue, and the matter is now ready for ruling.

## DISCUSSION

Bletchley objects to FBR's requests for both the Restructuring Fee and the reimbursement

of expenses. As to the Restructuring Fee, Bletchley objects to FBR's entitlement to the Fee and

the amount requested and questions the standard of review. With respect to the expenses sought,

Bletchley contends that FBR has no basis for reimbursement of its attorneys' fees. Additionally,

Bletchley argues that the attorneys' fees were not pre-approved, are not reasonable, and do not

benefit the Debtors' bankruptcy estates and that, accordingly, they should be either denied or

substantially reduced.

### A. The Restructuring Fee

### 1. FBR's Entitlement to the Restructuring Fee

Bletchley initially explained that its objection to FBR's entitlement to the Restructuring

Fee was restated in order to have "a clear and clean record" for "subsequent appeals." (FBR's

Resp., Ex. A, 10:24-11:2.) Bletchley now claims that its entitlement objection can be

appropriately reviewed and decided as a motion to reconsider under Bankruptcy Rule 9024.

Rule 60(b), made applicable to bankruptcy proceedings by Bankruptcy Rule 9024, allows

a court to relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1)  mistake, inadvertence, surprise, or excusable
>       neglect;

(2)      newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)      fraud . . ., misrepresentation, or misconduct by an opposing party;

(4)      the judgment is void;

(5)      the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)      any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is an extraordinary remedy and is granted only under exceptional circumstances. *In re Aztec Supply Corp.*, 399 B.R. 480, 489 (Bankr. N.D. Ill. 2009). The burden of establishing proper grounds for Rule 60 relief rests on the movant. *Travelers Cas. & Sur. Co. v. Ockerlund (In re Ockerlund)*, Nos. 05 B 59801, 10 C 5738, Adv. No. 06 A 1034, 2011 WL 249456, at *4 (N.D. Ill. Jan. 25, 2011). A motion under Rule 60(b) is left to the sound discretion of the Court. *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994).

Bletchley claims that relief under Rule 60(b) is warranted under subsection (6), the "any other reason" catchall. Despite the fact that Rule 60(b)(6) does not list specific factors justifying relief, the subsection "provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (internal quotation omitted). Relief under Rule 60(b)(6) requires "a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir. 1986).

8

Although the statutory text of Rule 60(b)(6) is broad, a "compelling showing" of inequity,

hardship, or unfairness is necessary to warrant relief under that subsection. *Cincinnati Ins. Co. v.

Flanders Elec. Motor Serv., Inc.,* 131 F.3d 625, 630 (7th Cir. 1997).

Bletchley has failed to establish proper grounds for Rule 60 relief. For the most part,

Bletchley merely reiterates arguments that were already addressed and rejected, rather than

making a compelling showing of inequity, hardship, or unfairness to satisfy the requirements of

Rule 60(b)(6). "Reconsideration is not an appropriate forum for rehashing previously rejected

arguments." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th

Cir. 1996). The rulings of a bankruptcy court "are not intended as mere first drafts, subject to

revision and reconsideration at a litigant's pleasure." *Deady v. Hanson (In re Hanson)*, 438 B.R.

144, 148 (Bankr. N.D. Ill. 2010), *aff'd*, 470 B.R. 808 (N.D. Ill. 2012) (internal quotation

omitted). Thus, the Court will not grant Bletchley's request for reconsideration based on

reiterated arguments that were already rejected by the Court.

Other than repeating the arguments already addressed by the Court in the October 2014

Opinion, Bletchley's only new argument regarding the Restructuring Fee is that the Court made a

legal error. Specifically, Bletchley inaccurately contends that the Court relied solely on the

contract interpretation principle of *contra proferentem* to resolve the ambiguity in the Retention

Order regarding entitlement to the Restructuring Fee. Bletchley argues that, by doing so, the

Court impermissibly shifted the burden to Bletchley to prove that FBR is *not* entitled to the

Restructuring Fee. Legal error is not one of the specified grounds for a motion under Rule 60(b).

*Banks v. Chi. Bd. of Educ.,* 750 F.3d 663, 667 (7th Cir. 2014); *Marques v. Fed. Reserve Bank of

Chi.,* 286 F.3d 1014, 1017-18 (7th Cir. 2002). In fact, legal error is a "forbidden ground, because

if permitted it would enable a losing party to appeal outside the time limits for appeals without

excuse[.]" *Marques*, 286 F.3d at 1017-18 (citation omitted).  For purposes of a Rule 60(b)

motion, a movant must show that the court committed some nonlegal mistake that could not be

corrected on appeal.  *Id.*

Bletchley has not sustained its burden under Rule 60(b).  Accordingly, Bletchley's request

for reconsideration under Rule 60(b) is denied.

### 2.  The Applicable Standard

Next, Bletchley contends that the Court did not rule on the standard that governs the

Restructuring Fee.  Bletchley argues that the Court should review FBR's request for the

Restructuring Fee under the "reasonableness" standard of § 330, not the "improvidence" standard

of § 328(a).  Whether § 330 or § 328 controls, however, FBR, as the applicant, bears the burden

of proof.  *See In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994); *In re

Wildman*, 72 B.R. 700, 708 (Bankr. N.D. Ill. 1987).

A bankruptcy court generally reviews a professional's fee application under § 330's

reasonableness standard after that professional has rendered services in the bankruptcy case.

However, under § 328(a), a professional may obtain pre-approval of a compensation agreement

that a bankruptcy court can subsequently modify only if the initial approval proves to have been

"improvident" in light of circumstances that were "not capable of being anticipated" at the time

the agreement was approved.[3]  11 U.S.C. § 328(a); *Paloian v. Grupo Serla S.A. de C.V.* 433 B.R.

---

[3] Section 328(a) provides, in its entirety, as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's
> approval, may employ or authorize the employment of a professional person under
> section 327 or 1103 of this title, as the case may be, on any reasonable terms and
> conditions of employment, including on a retainer, on an hourly basis, on a fixed or
> percentage fee basis, or on a contingent fee basis.  Notwithstanding such terms and

19, 45 (N.D. Ill. 2010); *see also In re Prod. Assocs., Ltd.*, 264 B.R. 180, 186 (Bankr. N.D. Ill.

2001). "[U]nless unanticipated developments occur, the court may not override its own previous

order authorizing a specific compensation arrangement." *In re Begun*, 162 B.R. 168, 178 (Bankr.

N.D. Ill. 1993) (citing *In re Confections by Sandra, Inc.*, 83 B.R. 729, 731-32 (B.A.P. 9th Cir.

1987)).

To determine which standard governs the Restructuring Fee, the Court turns to the

documents that comprise the agreement regarding the Fee–the Engagement Letter and the

Retention Order.  According to the explicit language of the Engagement Letter, the terms and

conditions of FBR's retention, including the payment of the Restructuring Fee, are subject to

review under § 328(a).  Specifically, paragraph 4 states that the Debtors agreed to retain FBR on

the terms and conditions in the Engagement Letter subject to review only under § 328(a) and *not*

subject to review under § 330 or any other standard of review.  (*See* FBR's Am. Fee App, Ex. A

¶ 4.)  The express language of the Retention Order mirrors the language in the Engagement Letter

with respect to the standard governing the Restructuring Fee, with paragraph 4 stating that FBR's

fees are subject to review pursuant only to the standards in § 328(a).  (*See* Docket No. 79, ¶ 4.)

In contrast, paragraph 4 of the Retention Order states that reimbursement of FBR's out-of-pocket

expenses is subject to further review and approval by the Court under § 330.  (*Id.*)

Despite the express language of the Engagement Letter and the Retention Order,

Bletchley argues that the Restructuring Fee should be reviewed under the "reasonableness"

---

conditions, the court may allow compensation different from the compensation
provided under such terms and conditions after the conclusion of such employment, if
such terms and conditions prove to have been improvident in light of developments not
capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C § 328(a).

standard of § 330 because: (1) both the bankruptcy court and the district court found that the

Retention Order was ambiguous regarding the Restructuring Fee, and (2) FBR failed to satisfy its

burden to ensure that the Retention Order contained specific, unambiguous terms and conditions

to permit review under the "improvidence" standard of § 328(a).[4]  Bletchley is mistaken.

First, both this Court and the district court found that the Retention Order was ambiguous

as to FBR's entitlement to the Restructuring Fee, not in connection with which standard to apply

in reviewing that Fee.  The Retention Order clearly provides that § 328(a) is the standard to

apply.  Second, although the Retention Order does not contain specific terms and conditions with

respect to the parties' fee arrangement, the Order clearly refers back to the Engagement Letter,

which, in turn, expressly, specifically, and unambiguously provides those terms and conditions.

(*See* Docket No. 79, ¶ 2 ("In accordance with section 328(a) of the Bankruptcy Code, the Debtors

are authorized to employ and retain FBR as their financial advisor and investment banker *on the*

*terms set forth in the Engagement Letter*[.]") (emphasis added).)

Read together, the Engagement Letter and the Retention Order unequivocally establish

that the Restructuring Fee must be reviewed pursuant to § 328(a).  Accordingly, the Court holds

that the applicable standard of review with respect to the Restructuring Fee is § 328(a).

### 3.  The Amount of the Restructuring Fee

As to the amount of the Restructuring Fee, Bletchley argues that the Fee should be

"significantly lowered" under § 328(a) because the amount requested by FBR is "improvident" in

---

[4] As to the latter, Bletchley relies on the Third Circuit's decision in *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253 (3d Cir. 1995), contending that since the Retention Order does not "expressly and unambiguously state specific terms and conditions (*e.g.*[,] specific hourly rates or contingency fee arrangements) that are being approved pursuant to the first sentence of section 328(a), then the terms and conditions are merely those that apply in the absence of specific agreement." *Id.* at 261. According to Bletchley, "[t]hat leaves the [C]ourt free to apply lodestar rates unfettered by the strictures of the second sentence of section 328(a)." *Id.*

light of developments not capable of being anticipated at the time of the fixing of the terms and

conditions of the Retention Order.[5]  Specifically, Bletchley alleges that the Debtors never had a

"meeting of the minds" as to how much FBR should be paid and for what.  According to

Bletchley, FBR's request of almost $2.6 million for the Restructuring Fee, as well as monthly

fees of $220,000, for approximately 400 hours of work, would result in an hourly rate of $6,420.

Additionally, Bletchley contends that FBR failed to help the Debtors achieve a successful

restructuring, did little work, did not benefit the Debtors' bankruptcy estates, and did not

contribute any real value to the success of the chapter 11 case, none of which could have been

anticipated at the outset of the engagement.

The record in this case establishes that there were no intervening circumstances that were

incapable of anticipation by the bankruptcy court or the parties at the time the Retention Order

was approved.  As discussed above, the Retention Order clearly refers back to the Engagement

Letter, which, in turn, provides specific, unambiguous language regarding the amount of fees to

be paid to FBR in compensation for services rendered pursuant to the engagement.  The

Engagement Letter was carefully and precisely prepared, undergoing at least four drafts before

the parties ultimately agreed to the final version that was executed on August 13, 2009.

Paragraph 3 of the Engagement Letter unequivocally provides the calculations to determine the

amount of the Restructuring Fee.  Based on that plain language, the amount of the Restructuring

Fee was reasonably foreseeable.

---

[5] FBR claims that Bletchley affirmatively abandoned its improvidence objections by failing to support them
on summary judgment and by admitting under oath, in response to an interrogatory, that there were no developments
that occurred in the case that were incapable of being anticipated at the time of entry of the Retention Order.
Whether Bletchley's improvidence objections were abandoned or not is of no moment, because, as discussed below,
none of Bletchley's contentions satisfies the § 328(a) improvidence exception.

Nevertheless, Bletchley alleges that the Court could not have anticipated, at the time the

Retention Order was approved, that the Debtors, with FBR's assistance, would fail to achieve a

successful restructuring or that FBR would do very limited work for the Debtors.  Not only are

those arguments erroneous, but they also fail to satisfy § 328(a)'s improvidence exception.

First, the evidence contradicts Bletchley's contentions.  The testimony at trial established

that FBR did substantial work, reviewing, analyzing, and pursuing restructuring alternatives,

engaging in an extensive marketing campaign, producing an investment memorandum, creating a

management presentation, and otherwise performing the financial services contemplated by the

Engagement Letter.  The district court also found that "FBR performed the contracted-for

financial services."  (*See* Docket No. 1164 at 1.)

As to satisfying § 328(a)'s improvidence exception, Bletchley cannot in good conscience

argue that the Debtors' failure to achieve a successful restructuring could not have been

anticipated by the bankruptcy court or the parties when the Retention Order was approved.  In

what was arguably the hospitality industry's worst economic downturn in decades, the ability of

the Debtors–or any other entity–to successfully restructure hotel properties was a big risk, and

everyone, including the bankruptcy court, knew it.[6]

Similarly, neither Bletchley's allegation about the limited number of hours that FBR

worked nor its assertion about the correspondingly high hourly rate that resulted satisfies the §

---

[6] Adding to that risk was the fact that the Debtors' approach to the chapter 11 case was to propose a plan and bid procedures which did not provide for the lenders to credit bid their claims in the sale of the Debtors' assets. This approach was very controversial and not consistent with the majority of the case law other than the relatively new case *In re Philadelphia Newspapers, LLC*, 599 F.3d 298 (3d Cir. 2010).  This approach failed, and the Debtors were permitted to take a very prompt appeal directly to the Seventh Circuit, *see River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642 (7th Cir. 2011), and, ultimately, to the U.S. Supreme Court, *see RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012), which upheld both the bankruptcy court's and the Seventh Circuit's rejection of the Debtors' plan approach.

328(a) improvidence exception, given the provisions in the documents controlling the

engagement. The Retention Order stated that FBR was "not required to provide or conform to

any schedule of hourly rates" and that FBR's non-restructuring professionals were not required to

keep time records at all. (*See* Docket No. 79 ¶ 3.) Additionally, based on the express language

of the Engagement Letter, the Debtors agreed that in return for FBR's experience, expertise, and

knowledge, they would compensate FBR according to the terms of the Engagement Letter no

matter how many or how few hours FBR professionals worked during the engagement. (*See*

FBR's Am. Fee App, Ex. A ¶ 4.) Thus, the alleged limited number of hours that FBR actually

worked and the corresponding hourly rate that resulted were not developments incapable of being

anticipated at the time the Retention Order was approved.[7] *See In re Churchfield Mgmt. & Inv.

Corp.*, 98 B.R. 893, 900 (Bankr. N.D. Ill. 1989) (noting that a bankruptcy court "should not

reduce a contingent fee merely because the hourly rate looks high in hindsight, but only where

the Court is prepared to exercise its substantial discretion under § 328(a) and only upon a specific

finding of truly unanticipatable developments" (internal quotation omitted)).

Finally, Bletchley's claims that FBR's work did not benefit the Debtors' bankruptcy

estates or contribute value to the success of the chapter 11 case are not appropriately considered

in a prospective analysis under § 328(a). A "typical engagement . . . preclude[s] an examination

of . . . the impact [a] financial advisor ha[s] in bringing about [a] transaction." *In re XO*

---

[7] Additionally, FBR and the Debtors carefully negotiated both the Restructuring Fee and the other fees to be paid to FBR under the Engagement Letter, so the ultimate figures should have been no surprise to anyone. As noted above, the Engagement Letter underwent at least four drafts before the parties ultimately agreed to the final version, which provided for, *inter alia*, a monthly fee of $10,000. Previous drafts included a much higher figure; the first draft, for example, provided for a monthly fee of $165,000. That fee was reduced in exchange for a higher Restructuring Fee. And, in fact, FBR's representatives testified at the three-day bench trial that, given market rates, they would not have agreed to a monthly fee of $10,000 if the Restructuring Fee had not been increased. *See River Rd.*, 520 B.R. at 694.

*Commc'ns, Inc.*, 398 B.R. 106, 112 (Bankr. S.D.N.Y. 2008). Rather, "the parties agree to assume the attendant risks involved as to the potential for underpayment or overpayment for the services rendered." *Id.*

In sum, Bletchley has failed to identify any developments not capable of being anticipated at the time the Retention Order was approved. The Debtors entered into the Engagement Letter with their eyes open. Upon the execution of the Engagement Letter, the Debtors and FBR did indeed have a "meeting of the minds" as to how much FBR would be paid and for what. Accordingly, the Court will not reduce the amount of the Restructuring Fee requested by FBR and holds that FBR is entitled to the Restructuring Fee in the amount of $2,568,145.89.[8]

## B. Reimbursement of Expenses

FBR also asks the Court to reimburse its expenses of $1,846,838.32. Of that, $1,773,331.00 is for attorneys' fees, most of which were incurred in defense of FBR's fee request. FBR argues that it is entitled to the reimbursement of its expenses because both § 330(a) and the pre-approved Engagement Letter provide for that reimbursement. Bletchley objects to FBR's attorneys' fees, alleging that FBR has no statutory or contractual basis for the reimbursement. In addition, Bletchley contends that the attorneys' fees were not pre-approved, are not reasonable, and do not benefit the Debtors' bankruptcy estates and that, therefore, they should be either denied or substantially reduced.

### 1. Supreme Court Decision Denying Compensation for Defending Fees in Bankruptcy

---

[8] This figure comes from the calculations outlined in Exhibit B to the Amended Fee Application and the November 12, 2014 declaration of FBR managing director Brian Taylor, which is Exhibit D to the Amended Fee Application.

The United States Supreme Court recently issued *Baker Botts L.L.P. v. ASARCO LLC,*

135 S. Ct. 2158 (2015).  The question in that case is precisely the one at issue here regarding

FBR's attorneys' fees:  Whether § 330(a)(1) allows a bankruptcy court to award attorneys' fees

for work performed in defending a fee application.  Because the Supreme Court held that it does

not, FBR is not entitled to reimbursement of the attorneys' fees it incurred for fee-defense work.

In *Baker Botts,* the petitioners were two law firms that represented ASARCO LLC, a

copper mining, smelting, and refining company ("ASARCO"), as a debtor-in-possession during

the pendency of its chapter 11 bankruptcy case.  *Id.* at 2163.  Among other things, the law firms

successfully prosecuted a fraudulent transfer action against ASARCO's parent company, which

ultimately resulted in a judgment of $7 billion to $10 billion in ASARCO's favor.  *Id.*  The

judgment led to the confirmation of a plan under which all of ASARCO's creditors were paid in

full.  *Id.*

Seeking compensation under § 330(a)(1), the petitioners subsequently filed their fee

applications, to which ASARCO, now controlled again by its parent company, objected.  *Id.*

After conducting a six-day trial, the bankruptcy court overruled ASARCO's objections and

awarded the petitioners fees which included over $5 million for time spent defending the fee

requests.  *Id.*  In the appeals that followed on various aspects of the fee award, the district court

held that the law firms could recover the fees incurred for the fee-defense litigation.  *Id.*  The

Fifth Circuit Court of Appeals reversed as to the reimbursement of those fees, ruling that

bankruptcy professionals may not be paid for defending fee applications unless the adverse party

acted in bad faith, vexatiously, wantonly, or oppressively.  *ASARCO LLC v. Jordan Hyden*

*Womble Culbreth & Holzer, P.C. (In re ASARCO LLC),* 751 F.3d 291, 299-302 (5th Cir. 2014),

*aff'd sub nom. Baker Botts L.L.P. v. ASARCO LLC,* 135 S. Ct. 2158 (2015). The U.S. Supreme

Court granted certiorari on the sole issue of whether such fees are compensable under §

330(a)(1). *Baker Botts,* 135 S. Ct. at 2163.

In *Baker Botts,* the Supreme Court affirmed the fee-defense portion of the Fifth Circuit's

decision, holding that § 330(a) does not allow a bankruptcy court to award attorneys' fees for

work performed in defending a fee request. *Id.* at 2163-69. The Court reasoned that the plain

language of § 330(a), which permits only "reasonable compensation for actual, necessary

services rendered by" a professional retained by the estate, does not trump the "American Rule"

that each party bear the cost of its own attorneys' fees unless a statute or contract provides

otherwise. *Id.* at 2164-65.

Specifically, the Court explained that the text of § 330(a) does not include provisions that

authorize "a reasonable attorney's fee," "fees," or "litigation costs" to a "prevailing party" in the

context of an adversarial "action" as do fee-shifting statutes that override the American Rule. *Id.*

Noting that other Bankruptcy Code provisions, such as 11 U.S.C. § 110(i)(1)(C),[9] explicitly

transfer litigation costs from one party to another, the Court observed that "[h]ad Congress

wished to shift the burdens of fee-defense litigation under § 330(a)(1) in a similar manner, it

easily could have done so." *Id.* at 2166. Accordingly, the Court found that § 330(a) "neither

---

[9] Section 110(i)(1)(C) provides:

> If a bankruptcy petition preparer violates this section or commits any act that the
> court finds to be fraudulent, unfair, or deceptive, on motion of the debtor, trustee,
> United States trustee (or the bankruptcy administrator, if any), and after notice and
> a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor
> . . . reasonable attorneys' fees and costs in moving for damages under this
> subsection.

11 U.S.C. § 110(i)(1)(C).

18

specifically nor explicitly authorizes courts to shift the costs of adversarial litigation from one side to the other." *Id.* at 2165.

Rather, § 330(a)(1) provides "reasonable compensation" for all § 327(a) professionals–attorneys, accountants, and other professionals–only for "actual, necessary services rendered," 11 U.S.C. § 330(a)(1)(A), "for all manner of work done *in service of* the estate administrator," *Baker Botts,* 135 S. Ct. at 2165. According to the Court, "[t]ime spent litigating a fee application *against* the administrator of a bankruptcy estate cannot be fairly described as [services rendered] *for. . .* that administrator." *Id.* (emphasis added). Thus, the Court noted that "litigation in defense of a fee application is not a 'service' within the meaning of § 330(a)(1)." *Id.* at 2167. While acknowledging that fees can be awarded for work performed in *preparing* a fee application under § 330(a)(6), the Court found no similar basis for approving compensation for fees incurred in *defending* a fee application. *Id.* at 2167-68.

FBR argues that it is entitled to reimbursement of expenses, including attorneys' fees and costs, because the Engagement Letter and Retention Order provide for them and because FBR is entitled to reasonable compensation under § 330(a)(1). The problem for FBR, however, is that the Retention Order expressly states that the reimbursement of FBR's expenses, including attorneys' fees, is subject to review under § 330. And, as discussed at length above, the Supreme Court has now explicitly held that § 330(a)(1) does not permit a bankruptcy court to award attorneys' fees for work performed in defense of fee requests. There is no distinction between fees incurred by debtor's counsel and those incurred by a third party's counsel when the fees are to be reviewed under § 330 as they are here. Accordingly, under § 330(a)(1), FBR is not entitled to reimbursement of the attorneys' fees it incurred for fee-litigation work.

19

FBR's contract-based argument also fails. Parallel to the reasoning in *Baker Botts*, the Court finds that the majority of the "fees and expenses of legal counsel" for which FBR seeks reimbursement were not incurred "in connection with the services provided" under the engagement as required pursuant to paragraph 3(e) of the Engagement Letter. (*See* FBR's Am. Fee App, Ex. A ¶ 3(e).)  Nor were most of those fees and expenses reasonably likely to benefit the bankruptcy estate or necessary for the administration of the case. *See* 11 U.S.C. § 330(a)(4)(A)(ii).  Rather, they were incurred primarily in connection with FBR's fee-defense litigation *against* the bankruptcy estate.  As for the indemnification provisions of the Engagement Letter, the terms provide for the recovery of attorneys' fees incurred as a result of "any threatened or pending claim" brought against FBR as a defendant (*see* FBR's Am. Fee App, Ex. A, App. I); they do not apply to situations like this one in which FBR is the applicant, movant, or petitioner.  Additionally, neither paragraph 3(e) nor the indemnification provisions contain sufficient language to override the American Rule.  Although paragraph 3(e) refers to "reasonable fees and expenses of legal counsel" and the indemnification provisions cite to "reasonable counsel fees and expenses," neither includes "prevailing party" language in the context of an adversarial "action."

Because the expenses incurred by FBR are subject to review under § 330 and because the Supreme Court's decision in *Baker Botts* is now the law of the land, the Court holds that FBR may not recover the attorneys' fees it incurred for defending its fee request.

**2. Bad-Faith Litigation**

In its response to Bletchley's objections, which was filed prior to the Supreme Court's ruling in *Baker Botts*, FBR argues, alternatively, that the Fifth Circuit's decision in *ASARCO*

suggests that FBR's attorneys' fees should be allowed. Specifically, the Fifth Circuit advised

that "[w]here appropriate, the courts should not hesitate to implement the exception to the

American Rule that allows fee shifting where an adverse party has acted in bad faith, vexatiously,

wantonly, or for oppressive reasons."[10] *ASARCO*, 751 F.3d at 302 (citing *Chambers v. NASCO,*

*Inc.*, 501 U.S. 32, 45-46 (1991)). FBR also cites to *In re Volpert*, 110 F.3d 494, 500 (7th Cir.

1997), for the proposition that bankruptcy courts have authority under § 105 to punish an

attorney who "unreasonably and vexatiously multiplies the proceedings before them." On these

bases, FBR argues that the Court should allow the attorneys' fees incurred in defense of its fee

request because Bletchley's "scorched earth tactics" drove up FBR's litigation costs. Bletchley

did not respond to FBR's arguments in this regard.

The Court must "exercise caution in invoking its inherent power" and "comply with the

mandates of due process, both in determining that the requisite bad faith exists and in assessing

fees[.]" *Chambers*, 501 U.S. at 50. "[W]hen there is bad-faith conduct in the course of litigation

that could be adequately sanctioned" under the Bankruptcy Code or the Rules, the Court usually

---

[10] The Fifth Circuit did not address whether ASARCO's counsel was entitled to attorneys' fees for its fee-defense litigation under the bad-faith exception to the American Rule. The Fifth Circuit specifically noted that "[n]o issues falling within *Chambers* were raised in response to reorganized ASARCO's fee objections here." *ASARCO*, 751 F.3d at 302. The Supreme Court also did not address the *Chambers* issue in *Baker Botts*. Instead, in response to the United States' concerns about the possibility of frivolous objections to fee applications, the Supreme Court noted that Bankruptcy Rule 9011 authorizes courts to impose sanctions for bad-faith conduct in litigation, which may include an order for the payment of reasonable attorneys' fees. *Baker Botts*, 135 S. Ct. at 2168 n.4.

Under Rule 9011, bankruptcy's analogue to Federal Rule of Civil Procedure 11, a court may sanction a party who files a document for an improper purpose, such as to harass or to cause unnecessary delay or cost. Fed. R. Bankr. P. 9011(b), (c); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Rule 9011 sanctions "are not tied to the outcome of litigation; the relevant inquiry is whether a specific filing was, if not successful, at least well founded." *Chambers*, 501 U.S. at 53. The Rule imposes "an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Id.* at 47.

FBR does not argue that Bletchley violated Rule 9011. Although the Court may *sua sponte* enter an order describing the specific conduct that appears to violate Rule 9011 and direct counsel to show cause as to why it has not violated the Rule, the Court does not find, based on the evidence of record or the history of this case, that any specific filing was made in bad faith or for an improper purpose.

should rely on the Code or the Rules rather than its inherent power. *Id.* Only if, in "the informed discretion" of the Court, "neither the statute nor the Rules are up to the task, the [C]ourt may safely rely on its inherent power." *Id.; see also Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) (noting that courts' "inherent sanctioning powers" are "subordinate to valid statutory directives and prohibitions"). Thus, before considering whether fee shifting is in order under its "inherent power," the Court will review Bletchley's conduct to determine whether attorneys' fees should be awarded to FBR under § 105.

### a. Section 105

In *Volpert*, the Seventh Circuit found that § 105 is the appropriate source of authority for a bankruptcy court to sanction attorneys who demonstrate conduct that unreasonably and vexatiously multiplies the court's proceedings. 110 F.3d at 500; *see also Law*, 134 S. Ct. at 1198. The Seventh Circuit also acknowledged the court's inherent power to impose sanctions but found it "unnecessary to say that the power to sanction" that it recognized in *Volpert* is "properly characterized as an 'inherent' one." *Volpert*, 110 F.3d at 501. Rather, the Seventh Circuit simply held that "the plain language of § 105 furnishes the bankruptcy courts with ample authority to sanction conduct that abuses the judicial process, including conduct that unreasonably and vexatiously multiplies bankruptcy proceedings." *Id.*

Turning to the alleged conduct in the instant matter, FBR argues that Bletchley engaged in a "scorched earth" approach to the fee objection litigation which drove up FBR's expenses and that Bletchley is the sole reason for those expenses. Specifically, FBR contends that the time spent on the legal services for which reimbursement is sought was both "necessary and in direct response to Bletchley's litigation demands and tactics." (FBR's Resp. at 18.) According to FBR,

22

Bletchley subjected FBR to exhaustive discovery, including "onerous" document requests and

four notices of deposition, while refusing to produce its own documents or to participate in any

meaningful settlement negotiations. (*Id.* at 18 n.18.)

This Court was not involved in the first round of litigation on the fee application.

However, the Court has reviewed all of the pleadings that were filed, the transcript of the

proceedings that led to the summary judgment order, the appellate briefs, and the district court

opinion. Further, the Court presided over the trial on remand to determine whether FBR was

entitled to the Restructuring Fee under the Engagement Letter and the Retention Order. Based on

the Court's review, it is clear that Bletchley aggressively pursued its objections and that FBR was

equally aggressive in its defense. While FBR argues that Bletchley was not forthcoming in

discovery, at the end of the day, both sides engaged in extensive discovery, and the litigation that

ensued was based on a full record. The Court understands that two separate mediation attempts

were made in this case. Those proceedings were confidential. Just because Bletchley

aggressively pursued its objection and the parties were not able to agree on a resolution does not

mean that Bletchley engaged in an abuse of the judicial process or conduct that unreasonably and

vexatiously multiplied the proceedings. Sanctions, under any authority, are the exception, not the

norm, and should not be imposed lightly, "even in the face of aggressive litigation tactics and

strategy." *Kramer v. Mahia (In re Khan)*, 488 B.R. 515, 528 (Bankr. E.D.N.Y. 2013), *aff'd sub*

*nom. Dahiya v. Kramer*, No. 13-CV-3079 (DLI), 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014),

*aff'd,* 593 F. App'x. 83 (2d Cir. 2015). Thus, the Court will not exercise its powers under § 105

to sanction Bletchley for its litigation tactics in this case.

### b. The Inherent Power of the Court

The sanctioning scheme of the Code and the Rules does not displace the Court's inherent power to impose sanctions for bad-faith conduct. *Chambers*, 501 U.S. at 46. The various mechanisms, "taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions." *Id.* Each of the other mechanisms reaches only specific people or conduct, while the inherent power extends to "a full range of litigation abuses." *Id.* Thus, the inherent power "exist[s] to fill in the interstices." *Id.*

In *Chambers*, the Supreme Court explored the scope of the inherent power of a federal court to sanction a litigant for bad-faith conduct. More recently, in *Marrama v. Citizens Bank of Massachusetts*, the Supreme Court recognized that a bankruptcy court may likewise possess an inherent power to sanction abusive litigation practices. 549 U.S. 365, 375-76 (2007). This inherent power, however, has limitations and, because of its potency, must be exercised with "restraint and discretion." *Chambers*, 501 U.S. at 44 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). The "wielding of th[is] inherent power is particularly appropriate when the offending parties have practiced a fraud upon the court" or the "very temple of justice has been defiled." *Id.* at 42, 46 (internal quotations omitted). The imposition of sanctions in these instances "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself," thereby "serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" *Id.* at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).

Based on the evidence of record, the Court finds that Bletchley's aggressive pursuit of its

24

objections does not constitute abusive litigation tactics.  Given the substantial fees and expenses

at stake and the ambiguity of the Retention Order, Bletchley acted to protect its interests and

undoubtedly believed that its objections were well-founded.  Bletchley did not commit a fraud

upon the Court, nor did it defile the "very temple of justice."  "The standards for bad faith are

necessarily stringent, and [a] party should not be penalized for maintaining an aggressive litigation

posture." *Fortune v. Taylor Fortune Grp., L.L.C.*, No. 15-60009, 2015 WL 4624211, at *3 (5th

Cir. Aug. 4, 2015) (internal quotation omitted).  Accordingly, the Court will not use its inherent

power to impose sanctions on Bletchley.

### 3. Compensation for Expenses Not Related to the Defense of FBR's Fees

In addition to fee-defense work, FBR's counsel also provided other legal services to FBR

during the pendency of the case.  Pursuant to paragraph 3(e) of the Engagement Letter, there is no

doubt that FBR is entitled to reimbursement of the expenses incurred in connection with that

work, and those expenses, as discussed above, are clearly subject to the Court's review under §

330 pursuant to paragraph 4 of the Retention Order.

According to the Amended Fee Application and the exhibits attached thereto, Venable

LLP ("Venable") provided 111.4 hours of legal services to FBR between June 2011, when

Venable was retained, and January 2012, when the Amended Fee Application was filed, for a total

of $50,542.00 in fees.  (*See* FBR's Am. Fee App, Ex. E at ¶ 11 of the declaration of Andrew J.

Currie (the "Currie Declaration") and the attachments thereto.)  A review of the applicable time

entries indicates that the work performed by Venable was for either:  (1) general representation in

connection with FBR's engagement in this case, which is reimbursable under § 330(a)(1); or (2)

assistance in preparation of both the original and amended fee applications, which is reimbursable

25

under § 330(a)(6).

Likewise, during the same time period, FBR hired Barack Ferrazzano Kirschbaum &

Nagelberg LLP ("Barack") as local counsel.  Pursuant to the Amended Fee Application and its

exhibits, Barack provided 13.5 hours of legal services between February 17, 2012 and July 19,

2012, for a total of $5,857.50, and 6.8 hours of legal services in November 2014, for a total of

$3,421.00, for preparation of the original and amended fee applications.  (*See* FBR's Am. Fee

App, Ex. F at ¶ 12 of the declaration of William J. Barrett (the "Barrett Declaration") and the

attachments thereto.)  These services are, thus, reimbursable under § 330(a)(6).

The Amended Fee Application and the exhibits attached thereto also outline a total of

more than $73,500.00 in out-of-pocket expenses incurred by FBR, Venable, and Barack.  The

Court has reviewed those expenses and has determined that $2,646.10 will be allowed.[11]

Accordingly, the Court will award FBR $62,466.60 for attorneys' fees and expenses for

work performed in connection with general representation and preparation of the original and

amended fee applications.

## CONCLUSION

For the foregoing reasons, Bletchley's objection is sustained in part and overruled in part.

The Court finds that Bletchley has not sustained its burden under Rule 60(b) and, thus, denies

Bletchley's request to reconsider the October 2014 Opinion.  Further, in accordance with the

Supreme Court's decision in *Baker Botts*, the Court finds that FBR is not entitled to

---

[11] The $2,646.10 in expenses were incurred by Venable during the period June 6, 2011 to February 16,
2012 according to the Currie Declaration and a review of Exhibit B to that declaration.  The Court has disallowed
the remaining out-of-pocket expenses requested by FBR as outlined in Exhibit C to the Amended Fee Application,
Exhibit B to the Currie Declaration, and Exhibit B to the Barrett Declaration as those expenses all appear to be
related to the litigation regarding Bletchley's objection to the FBR fee application.

reimbursement of its attorneys' fees for work performed in defense of its fee request.  Based on

these findings, the Court awards FBR a Restructuring Fee in the amount of $2,568,145.89 and

reimbursement of expenses in the amount of $62,466.60.  All other requested expenses are

denied.  A separate order will be entered consistent with this Memorandum Opinion.


**Dated:**  August 31, 2015                                    **ENTERED:**


                                                        JANET S. BAER
                                                        United States Bankruptcy Judge